**Karen LIVADAS, Plaintiff,**

v.

**Victoria BRADSHAW, in her official capacity as Labor Commissioner for the State of California, Defendant.**

**No. C90–0468 TEH.**

United States District Court,
N.D. California.

Sept. 27, 1994.

Richard G. McCracken, Michael T. Anderson, Davis, Cowell & Bowe, San Francisco, CA, for plaintiff Karen Livadas.

H. Thomas Cadell, Jr., Chief Counsel, Div. of Labor Standards Enforcement, Dept. of Indus. Relations, State of California, San Francisco, CA, for defendant Victoria Bradshaw.

STIPULATION FOR ENTRY OF CONSENT DECREE AND REQUEST FOR PUBLICATION IN THE FEDERAL SUPPLEMENT

THELTON E. HENDERSON, Chief Judge.

Plaintiff Karen Livadas and Defendant Victoria Bradshaw, Labor Commissioner for the State of California, hereby stipulate and agree that the Court may enter the supplementary remedial order filed herewith in this action. The parties respectfully request that this order be published in the Federal Supplement to facilitate public understanding of the disposition of this case.

IT IS SO STIPULATED.

*[PROPOSED] SUPPLEMENTARY REMEDIAL ORDER*

After careful consideration of motions, legal memoranda, exhibits and arguments of the parties, and consistent with the opinion of the United States Supreme Court issued June 13, 1994, in this matter, IT IS HEREBY ORDERED THAT:

1. The Court's order in this action dated October 12, 1990, remains in effect.

2. The Defendant Victoria Bradshaw and her successors as Labor Commissioner for the State of California shall promulgate the Interpretive Bulletin 94–4 (attached hereto as Exhibit A) as a remedial measure to bring the enforcement policy of the Division of Labor Standards Enforcement into compliance with federal law.

IT IS SO ORDERED.

EXHIBIT A

Department of Industrial Relations

DIVISION OF LABOR STANDARDS ENFORCEMENT

INTERPRETIVE BULLETIN

NUMBER: 94–4

DATE: August 5, 1994

TO: All Professional Staff

Statewide

/s/ Victoria L. Bradshaw

FROM: Victoria L. Bradshaw

State Labor Commissioner

San Francisco HQ

SUBJECT: *Livadas v. Bradshaw*

On June 13, 1994, the United States Supreme Court delivered its opinion in the case of *Livadas v. Bradshaw.*[1] The Supreme Court reversed the ruling of the Ninth Circuit Court of Appeals and held that the policy of the Labor Commissioner, which led to the rejection of the claim for waiting time penalties filed by Karen Livadas, was inconsistent with the National Labor Relations Act.

The Division's policy had relied on an understanding of the state courts' interpretation of the term "application;" an understanding which the U.S. Supreme Court held was misdirected. The policy adopted by the Labor Commissioner (and the California

---

1. The case began as *Livadas v. Aubry,* however, Supreme Court rules require that when the action is brought against an individual in his or her official capacity, the name of the person holding the office at the time of the decision must be inserted.

courts) was based upon the premise that the parties to a collective bargaining agreement (CBA) should have as much freedom as possible to interpret the terms of their agreement and that interference by a state agency was inappropriate. The Division's position was based on a 1975 interpretation of Labor Code § 229 by the California Court of Appeal in the case of *Plumbing, Heating and Piping Employers Council v. Howard,*[2] 53 Cal.App.3d 828, which, quoting from the California Supreme Court's decision in *Posner v. Grunwald–Marx (1961) 56 Cal.2d 169,* defined the word "application." Based on that decision, the Labor Commissioner's policy rejected claims where any term contained in the CBA had to be "applied" to the state law claim in order to effect a resolution. Since the penalty to be applied in a § 203 claim would obviously require the application of the wage rate contained in the CBA, the claim could not be processed.

The policy adopted by the Labor Commissioner in 1976 (See Policy/Procedural Memo 76–6) did not anticipate the more recent revelations by the Supreme Court regarding the arbitration of claims under collective bargaining agreements. Since the Division's policy was based on what it perceived to be state law, the Division had no reason to change its position, even in light of the language contained in footnote 12 of the U.S. Supreme Court's decision in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399 (1988), which dealt with "looking to" the pay rate contained in the CBA to determine damages.

According to the *Livadas* court, this concept of "looking to" the collective bargaining agreement to determine "damage computation," requires state courts (or agencies such as DLSE) to "consult" the collective bargaining agreement in the course of the litigation of the state claim. Thus, the Court holds that the state's concepts of arbitrability must be co-extensive with § 301 preemption principles. The issue of whether the state courts have interpreted the term "application" to mean something other than the meaning giv-

en that term in federal law, is irrelevant. It is the "legal character" of the claim which is dispositive and not whether a grievance arising from precisely the same set of facts *could* be pursued through the arbitration procedure.

The *Livadas* court does not, however, open the door to unlimited adjudication of claims filed by employees whose terms and conditions of employment are covered by collective bargaining agreements containing arbitration clauses. Justice Souter noted in the opinion that the Court was not holding "that a § 203 penalty claim could never be pre-empted . . ." Also, in discussing the *Plumbing, Heating and Piping Employers Council v. Howard* decision, the *Livadas* Court noted that in that case:

> "an employee sought to have an 'unpaid wage' claim do the office of a claim that a collective-bargaining agreement entitled him to a higher wage; that sort of claim, however, derives from the collective-bargaining agreement and, accordingly, falls within any customary understanding of arbitral jurisdiction." *Livadas v. Bradshaw,* Slip Opinion p. 18, fn. 20.

Unfortunately, except for that statement, there is little else in the *Livadas* decision to guide the Division in determining where the bright line between preemption and non-preemption might lie.

However, on June 20, 1994, the Supreme Court issued another decision dealing with similar issues. Justice Blackmun wrote for a unanimous court in the case of *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, —— S.Ct. —— (1994) (92–2058). This decision sheds more light on the concepts touched upon in the *Livadas* case and allows the development of a new Division policy, which will meet the concerns expressed by the *Livadas* Court.

The *Hawaiian Airlines* case involved the issue of whether an airline employee, who refused to certify the safety of an airliner that he considered unsafe and for reporting his concerns to the FAA, may pursue available state law remedies for wrongful dis-

---

2. This case is commonly referred to among Division personnel as the *Madlem* decision after the name of the defendant.

charge. In *Hawaiian Airlines,* Justice Blackmun places great reliance on whether the claim asserted by the employee is "independent" of the CBA and tests the concept of independence on whether the CBA is the *only source* of the right asserted by the employee.

The *Hawaiian Airlines* case holds that "[w]holly apart from any provision of the CBA, petitioners [Hawaiian Airlines] had a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistleblowing. The parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA did not relieve petitioners of this duty."

Justice Blackmun also contrasted the facts in the *Hawaiian Airlines* case with those found in the earlier case of *Allis–Chalmers v. Lueck* 471 U.S. 202. In the *Allis–Chalmers* case, the Court applied § 301 preemption to a state-law claim for bad-faith handling of an insurance claim. This was done because the employer's obligation to provide the insurance to employees was rooted firmly in the collective bargaining agreement and was not based on state law.

It appears that the Court is saying that if the state law right is *completely* stated in the statute and there is no need to interpret the CBA to resolve or enforce that right, there is no reason for preemption principles to apply. Justice Blackmun, in the *Hawaiian* case, cites the language of *Lingle* to explain this concept:

"In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes." *Lingle, supra,* at 408–409.

Coupling this concept with the language used in the *Livadas* decision, one can only conclude the provisions of Labor Code § 201, which require that an employer pay the employee for all wages due at time of discharge, creates a state-law right which is "independent" of the CBA. Since the *Livadas* Court says that "when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damage computation is no reason to hold the state law claim defeated by § 301," it must follow that DLSE should be able to accept and adjudicate claims for unpaid wages due at time of termination, as long as the meaning of contract terms is not the subject of dispute.

For example, if there is only one rate of pay under the CBA (or there exists no argument by the parties regarding the rate of pay due the employee), there would appear to be no impediment to adjudicating a claim to determine unpaid wages at the time of termination.[3] Of course, this conclusion would allow DLSE to enforce § 203 claims as well. However, if, as in *Livadas,* there were a number of wage rates provided under the CBA and, unlike *Livadas,* there was a bona fide dispute as to the hourly rate of pay the employee was owed, or if the amount of wages due required an interpretation of a particular provision in a CBA (vacation pay, holiday pay, etc.), the Division would hold the case in abeyance pending resolution of the matter or the issue involving contract interpretation under the grievance procedure provided in the CBA.[4]

Undoubtedly, many cases will arise which will involve the questions of whether or not the Division has jurisdiction. As a result, each situation will be addressed on a case-by-case basis. While the Division has attempted to anticipate as many situations as it can, there will arise unexpected fact situations, which were not considered or novel legal theories which must be analyzed. Inasmuch

---

**3.** We do not ordinarily receive claims for unpaid wages during the course of the employment, although § 96(a) would allow it. The Division has not taken a definitive position on this issue.

**4.** The grievance procedure may provide for resolution short of arbitration. For instance, the parties may agree at any step of the grievance process to a resolution of the dispute. That resolution, if it is in writing, would be determinative for purposes of the interpretation of the CBA on the particular point.

as the question of jurisdiction in this area is based on rather esoteric legal principles, the Division Legal Section *must* be consulted in *each* case *before* any decision on jurisdiction is made.

The following interim procedures are to be implemented immediately by all DLSE personnel and are to be followed until new, written directives are issued:

## I. Overview

A. No claim will be rejected solely because the employment was covered by the terms of a collective bargaining agreement.

B. Until further notice, every case involving employment covered by a CBA is to be referred to the assigned attorney no matter how routine the assigned Deputy or Hearing Officer feels the case may be. No *final* action is to be taken on such claim, unless the matter has been reviewed by the assigned attorney. This policy may be reviewed in the future depending on the experience the Division has with these types of cases.

C. In those cases where it has been determined that the Division has jurisdiction and that the meaning of contract terms is not the subject of dispute, the claims will be processed in accordance with Division policy like all other claims.

D. The District Office is *not* to take any action which is contrary to that recommended by the assigned attorney. If the assigned Deputy or Hearing Officer does not agree with the assigned attorney, the Senior Deputy is to contact the Regional Manager who, in turn, will bring the matter to the attention of the Labor Commissioner, the Labor Commissioner's designee or Chief Counsel. The final determination will rest with the Labor Commissioner.

## II. Handling Claims Which Clearly Indicate A CBA Covers The Employment

A. If a claim is filed, which indicates that there is a union contract covering employment, the assigned Deputy is to send the attached letter to the employer. (See Attachment A)

B. Attachment A is designed to alert the employer that a claim has been filed and that DLSE will take jurisdiction, unless the employer can show that the Labor Commissioner is preempted from doing so.

C. Regardless of whether or not the employer responds to the letter, the claim is not to be referred to the hearing process until the case is reviewed by the assigned attorney.

## III. Situations Where The Existence Of A CBA Is Not Initially Clear

A. When the fact that there is a CBA is not brought to the attention of the assigned Deputy until ·after the claim is filed, but before the initial conference is held, the Deputy is to follow the procedures set out in Section II, above.

B. When the fact that there is a CBA is not determined until the hearing, the Hearing Officer is to gather all the facts, but is not to make any decision pending referral (through the Senior Deputy) of the claim to the Legal Section for review.

If the Hearing Officer has *any* questions regarding the jurisdiction of the DLSE after having taken testimony at the hearing, he or she is to ask the assigned attorney to again review the facts and the law, and seek whatever guidance from the assigned attorney he or she feels is necessary.

## IV. Situations Where Resolution Of The Meaning of Contract Terms Is The Subject Of Dispute

A. In the event it is determined that the resolution of the state law claim would require resolution of the meaning of contract terms which are the subject of dispute, the matter is not to be dismissed, but the parties are to be notified that the claim will be held in abeyance pending arbitration as required.

B. Once the determination under the grievance procedure is made, the Labor Commissioner will then adjudicate the state law claim. For example, if there is a dispute concerning the appropriate wage for the employee making the claim, and exhaustion of the grievance procedure results in a determination, the Labor Commissioner may then adjudicate any unresolved waiting time penalty issues. The actual determination of the appropriateness of waiting time penalties will be evaluated on a case-by-case basis according to Division policy.

C. Claims which are ordered held in abeyance while certain matters are processed according to the grievance procedure, are not to be closed. Any such cases will be reported as open cases.

D. The parties will be notified of the action of the Labor Commissioner by first-class mail. The parties will further be notified of their responsibility to keep the Labor Commissioner advised of their current address.

E. The claimant (or his or her representative, if appropriate) must also be notified that it will be his or her responsibility to notify the assigned Deputy of the status of the grievance procedure.

V. **The Role Of Division Attorneys In Reviewing Cases**

A. Division attorneys are to give review of these cases a preference as follows:

1. Those cases which are referred before the setting of a conference are to be reviewed and returned to the Senior Deputy with a short memorandum of law supporting the position taken regarding jurisdiction within ten (10) days.

2. Those cases which are referred by the District Office as a result of a question by the Hearing Officer *must* be reviewed and returned to the Senior Deputy or the Hearing Officer within five (5) days with a short memorandum of law supporting the position taken regarding jurisdiction.

B. The short memorandum of law to be submitted by the assigned attorney is to address the facts (as alleged in the complaint filed by the claimant or those determined by the Hearing Officer at the hearing, whichever is appropriate) and apply the law to those facts. The memorandum is to be drafted in language which may be utilized by the Hearing Officer to support the Division's jurisdiction. Form memoranda are *not* to be used.

C. If the attorney finds that the employee's claim *must* involve the meaning of contract terms which are the subject of dispute, the attorney is to recommend to the assigned Deputy or the Hearing Officer that the parties be advised that the claim will be held in abeyance pending the arbitration of that issue. The attorney must use the memorandum of law to cite the reasons supporting the finding that the claim requires arbitration. Form memoranda are *not* to be used in conveying these decisions.

D. The memorandum received from the assigned attorney is to be made a permanent part of the case file. However, that memorandum *may* be subject to attorney/client privilege and *may* not be subject to discovery or public access requests. Please check with the Legal Section before releasing any correspondence between the Legal Section and the District Office.

E. If the assigned attorney has questions involving the issue of jurisdiction (including, of course, the arbitrability of a portion of the claim) he or she is to contact the Chief Counsel (or the Chief Counsel's designee in the event the Chief Counsel is not available). While it is not anticipated that many cases will present problems that would require answers which could not be ascertained from a reading of the relevant cases, the attorneys are encouraged to contact Headquarters if the facts or the issues presented are unique.

## VI. Outline Of Some Issues To Be Addressed By Legal Staff When Reviewing Claims Regarding Jurisdictional Questions

A. *Is the claim based on a state law right?*

Certain statutes, such as Labor Code § 201 (creates a right to be paid at time of termination) and § 202 (creates a right to be paid within 72 hours in the event of a voluntary quit), are state mandated rights, which are subject to certain restrictions and are applicable to all California employees, whether or not they are covered by a CBA.

B. *Is the state law right a minimum standard which may not be bargained away or may the collective bargaining agent bargain away the state-mandated minimum standard contained in a so-called "opt-out" statute?*

There are a number of state laws which contain "opt-out" [5] language allowing the parties to a CBA to fashion their own remedies within certain limits.

C. *Is the state law claim independent of the collective bargaining agreement?*

1. Not every wage claim will be subject to DLSE jurisdiction. While the *Livadas* Court tells us that the Commissioner may "look to" the collective bargaining agreement to determine damages due under a state law claim, it is only in the event that there is no controversy regarding the wage rate owed under the CBA that the "look to" theory can be utilized.

2. In the event there is only one wage rate listed in the CBA there can be no controversy regarding the wage rate in effect. Such would be the typical case in building trades employing journey-level classifications.

3. However, in those cases where there are a number of wage levels and the classification depends on a job description contained in the CBA, the problem becomes much more complex. As noted above, the *Livadas* Court drew a distinction between an "unpaid wage" claim and a claim that a CBA entitles one to a higher wage (citing the *Madlem* case). It seems clear that in certain situations, it may be difficult to draw these distinctions.

D. *Is the CBA the* only source *of the claimant's right?*

1. Where the CBA is the only source of the claimant's right, the claim is clearly pre-empted.

2. However, in those cases where the CBA requires payment of wages at the time of termination, the fact that the state law requires the same action would not preempt the application of the state law and its remedy.

3. In the limited circumstances where the CBA does not meet the criteria set out in the IWC Orders to relieve the employer of his obligation to pay state-mandated premiums for overtime, the Labor Commissioner will, if necessary, look to the CBA to determine the regular rate of pay. In the event that the employer disputes the rate of pay for overtime calculation, the regular rate of pay will be determined by pay records.

## VII. Some Examples

A. A union-represented employee X claims her former employer delayed three days in making final wage payment. The employer does not dispute the employee's rate of pay, hours worked, nor the time these final wages were paid. The DLSE may proceed with the claim for waiting time penalties. [These are the facts in *Livadas.* ]

---

5. The Livadas Court addressed these types of statutes and, although there appears to be a certain inconsistency in the Court's language in regard to the validity of these statutes, it would appear that as long as the "union-represented employees have the full protection of the minimum standard, absent any agreement for something different" these narrowly-drawn opt-out provisions are allowed. (See *Livadas*, Slip Op. p. 25)

An example of an "opt-out" provision is Labor Code § 227.3 which would allow a union to waive the right of its members to the benefits of accrual without forfeiture under *Suastez v. Plastic Dress–Up Co.*

B. A union-represented employee Y claims he is entitled to $8.00 per hour. His employer defends by claiming that he was only entitled to $7.00 per hour under the collective bargaining agreement. The employer made full and immediate final wage payment based on $7.00 per hour rate. In this case, the only dispute is whether the employee is entitled to $7.00 or $8.00 per hour. The employee's claim must therefore be held in abeyance for the parties to reach a final resolution of the wage-rate issue under the collective bargaining agreement.

If the arbitrator (or an earlier step of the grievance procedure) concludes that the employee was only entitled to $7.00 per hour, the employer is not liable for any penalties since it paid this amount immediately. If the arbitrator (or an earlier step of the grievance procedure) concludes that the employee was entitled to $8.00 per hour, DLSE may proceed with the employee's claim for penalties after receiving a definitive resolution of contractual issues.

C. A union-represented employee Z claims a rate of pay of $8.00 per hour. The employer has not paid *any* final wages for thirty days. The employer admits that it owes the employee wages for the final pay period, but claims it only owes her at the rate of $7.00 per hour. In this case, DLSE may hold the claim in abeyance so that the arbitrator (or an earlier step of the grievance procedure) may resolve whether employee Z was entitled to $7.00 per hour or $8.00 per hour under the applicable collective bargaining agreement.

However, even if the arbitrator rules that the employee is only entitled to $7.00 per hour (or the grievance is withdrawn or abandoned by the union), the employer will still be liable for penalties at the rate of $7.00 per hour. This is so because the employer has conceded that it owed the employee at least $7.00 per hour, but failed to make any final wage payment for thirty days. Under Labor Code § 206(a), the employer had a duty to make immediate payment of all wages it conceded were due to the employee. The dispute over whether the rate of pay was $7.00 per hour or $8.00 per hour does not prevent the Division from enforcing the penalty claim at least as to the amount the employer conceded was due.

Once again, if you have any questions, please contact your supervisor.

Attachment

## ATTACHMENT A

STATE OF CALIFORNIA

DEPARTMENT OF INDUSTRIAL RELATIONS

DIVISION OF LABOR STANDARDS ENFORCEMENT

455 Golden Gate Avenue, Room 3194

San Francisco, CA 94102

(415) 703–4750

PETE WILSON, Governor

August 8, 1994

Crown Industries

2223 Valley Pkwy

Somewhere, CA 91024

Attn: Richard Mann, Personnel Mgr.

Re: **Claim For Wages Filed by *Josh Jones***

Dear Mr. Mann:

Attached find a notice of claim filed against your firm with the Division of Labor Standards Enforcement by *Josh Jones,* a former employee.

The purpose of this letter is to point out that information leads us to believe that the employment in question may be covered by the terms of a collective bargaining agreement, which may contain an arbitration clause.

Obviously, if our information is correct, under certain circumstances, the Division of

Labor Standards Enforcement may be precluded from going forward with this claim at this time as a result of the preemptive effect of the National Labor Relations Act.

For instance, if resolution of the meaning of contract terms which are the subject of dispute is necessary in order to enforce or adjudicate the claim, the Division would not dismiss the case, but would hold it in abeyance and not proceed pending resolution of the issue under the terms of the grievance procedure contained in the CBA.

On the other hand, if the wage claim is based on an independent state remedy and can be determined without the resolution of the meaning of any of the terms of the collective bargaining agreement, the Division has an obligation to proceed (See *Livadas v. Bradshaw*, —— U.S. ——, 114 S.Ct. 2078). If you feel that you need further clarification of this issue you are urged to contact an attorney.

Yours truly,

DEPUTY LABOR COMMISSIONER I